# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| v. | * Crim. No. **PJM 09-468-8** |
| **NATHANIEL CHRISTOPHER FORD,** | * |
| Defendant. | * |

## MEMORANDUM OPINION

On February 26, 2010, Nathaniel Christopher Ford pled guilty to violating 21 U.S.C. § 846 for conspiring to distribute and possess with the intent to distribute five kilograms or more of powder cocaine and fifty grams or more of cocaine base, commonly referred to as crack. ECF No. 187. He was one of a dozen individuals indicted along with lead defendant, Mathew Estep, Jr. Ford sold the drugs Estep supplied in St. Mary's County and Charles County, Maryland. *See* ECF No. 187-1. Law enforcement presented video surveillance of at least four sales Ford made to confidential sources. *Id.* The offense did not involve a weapon.

On May 25, 2010, the Court sentenced Ford to 210 months imprisonment – the low end of the applicable guidelines range – and five years of supervised release. ECF No. 260.[1] At the time

---

[1] The United States Probation Office prepared a Presentence Investigation Report ("PSR") in anticipation of Ford's sentencing. *See* PSR (undocketed). Based on the quantity of drugs involved, the PSR determined that Ford's base offense level was 32 pursuant to U.S.S.G. § 2D1.1(a)(3). *See* PSR ¶ 19. Based on his three prior felony convictions for possession with intent to distribute cocaine, the PSR determined that, pursuant to U.S.S.G. § 4B1.1(b)(A), Ford was a career offender and subject to a five-point increase to his offense level. *Id.* ¶ 25. The PSR indicates that Ford was eligible for a three-level reduction for acceptance of responsibility. *Id.* ¶¶ 26-27. Thus, the PSR determined that his applicable offense level was 34. *Id.* ¶ 28. This would have resulted in a guidelines range of 262 to 327 months imprisonment. *Id.* at p. 20. However, at sentencing, the Government made a motion pursuant to U.S.S.G. § 5K1.1, requesting that the Court reduce Mr. Ford's offense level by two levels. As a result, with a final offense level of 32 and a criminal history category of VI, Ford faced a guidelines range of 210 to 262 months imprisonment. ECF No. 261.

1

of sentencing, the statutory term of imprisonment was ten years to life, pursuant to 21 U.S.C. § 841(b)(1)(A)(iii). *See* Presentence Investigation Report ("PSR") ¶ 59 (undocketed).

On April 12, 2020, in the midst of the COVID-19 public health emergency,[2] Ford filed the present Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act. ECF No. 634. He seeks a reduction of his sentence to time-served, the equivalent of a reduction of his sentence to approximately 143 months imprisonment after accounting for good-time credit. *See id.* at 2. The Government filed a response in Opposition on April 24, 2020. ECF No. 636. Ford filed his Reply on April 26, 2020. ECF No. 638.

For the reasons set forth below, the Court **GRANTS** the Motion and will reduce Ford's sentence from 210 months imprisonment to time-served plus three (3) days.

## I.

In an attempt to reduce the inequality in mandatory minimum sentences between drug trafficking offenses involving crack cocaine and powder cocaine, Congress passed the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 ("FSA"). *See United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. Mar. 23, 2020); *United States v. Mack*, Cr. No. PJM 09-00247, 2019 WL 7037961 * 2 (D. Md. Dec. 20, 2019). The First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), then allowed Courts, "on motion of the defendant... [to] impose a reduced sentence" for a criminal defendant (1) who was convicted of a "covered offense," *i.e.*, a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the [FSA]"; (2) if the offense was committed before August 3, 2010; and (3) if the defendant did

---

[2] *See, e.g., United States v. Glover*, Cr. No. JKB-08-0382, 2020 WL 1849763 * 2 (D. Md. Apr. 13, 2020) ("The Court's attention is particularly focused by the circumstance of the COVID-19 virus being present in federal Bureau of Prisons (BOP) facilities, which makes consideration of the Defendant's request urgent"); *United States v. Collins*, Cr. No. CCB-10-336, 2020 WL 1506176 * 1 (Mar. 30, 2020).

not already receive a reduction under the FSA or the First Step Act. *United States v. Robinson*, Cr. No. PJM-02-0227, 2019 WL 3867042 *2 (D. Md. Aug. 15, 2019).

There is no question that Ford's offense was committed before August 3, 2010 and he has not received a reduction under the FSA or the First Step Act. Whether his is a "covered offense" is the threshold question. *See Gravatt*, 953 F.3d at 260.

In *Wirsing*, the Fourth Circuit held that "[a]ll defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are eligible to move for relief under that Act." *United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019). Recently building on this ruling, the Fourth Circuit held in *Gravatt* that a conspiracy involving "the distribution of 50 or more grams of crack cocaine, which is a 'covered offense' under the Act because the penalties for it were modified by the Fair Sentencing Act, remains a covered offense if the conspiracy also charges distribution of powder cocaine, the penalties for which were not modified." *Gravatt*, 953 F.3d at 259; *see also United States v. Byers*, 801 Fed.Appx. 134, 135 (Mem) (4th Cir. 2020).

Accordingly, even though Ford's offense involved substantially more powder cocaine than crack cocaine, because his sentence was imposed pursuant to 21 U.S.C. § 841(b)(1)(A)(iii), he is clearly eligible for relief under the First Step Act. *Gravatt*, 953 F.3d 258; *see also United States v. Collins*, Cr. No. CCB-10-336, 2020 WL 1506176 * 1 (D. Md. Mar. 30, 2020); *United States v. Turner*, No. 09-018, 2020 WL 1917833 (W.D. Va. Apr. 20, 2020).

## II.

Eligibility, of course, does not automatically lead to a sentence reduction. Rather, it entitles a defendant to a substantive review of his motion on the merits. *See Gravatt*, 953 F.3d at 264. In determining whether the Court, acting in its discretion under Sections 404(b) and 404(c) of the First Step Act, should reduce Ford's sentence, the factors set forth in 18 U.S.C. § 3553(a) must be considered. *Id.*; *see, e.g., United States v. Logan*, Cr. No. CCB-10-0203, 2019 WL 3391618 *1 (D. Md. July 26, 2019). Those factors include (1) "the nature and circumstances of the offense;" (2) "the history and characteristics of the defendant;" (3) "the need for the sentence imposed;" and (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). The Court may also take into account Ford's post-conviction behavior. *See Logan* at *1; *Robinson* at *5.

The Government submits that the Court should deny Ford relief based on his prolonged history of criminal activity. *See* 18 U.S.C. § 3553(a)(1). It urges the Court to give considerable weight to Ford's three prior cocaine distribution convictions, which resulted in his classification as a career offender. *See* PSR ¶ 25. Noting that he "graduated" to larger quantities of cocaine over the years, the Government argues that Ford's prior sentences failed to deter sustained criminal conduct on his part and that he, therefore, presents a continuous potential for harm to the community. ECF No. 636, p. 9. The Government suggests that his current sentence of 210 months properly reflects the seriousness of the offense, affords adequate deterrence, and sufficiently protects the public from further crimes. *See* 18 U.S.C. § 3553(a)(2).

Ford counters that his offense was nonviolent in nature and that it did not involve a firearm. He explains that he was only a "subordinate" in the scheme, operating at the direction of the conspiracy's ringleader, Estep. *See* PSR ¶ 12. In the instant offense, he says, he sold drugs in

4

relatively small quantities, supplying drugs to confidential sources in amounts ranging from approximately 3 to 55 grams and authorities found only 19 grams within his home. *See* PSR ¶¶ 10, 13. While hardly *de minimis*, such amounts are notably less than the more than 5 kilograms of drugs he was deemed responsible for as part of the overall trafficking conspiracy. *See* PSR ¶ 14.

Ford asks the Court to particularly concentrate on avoiding unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). Even if released today, he explains, his sentence would still be greater than that of the conspiracy's organizer, Estep, who was released nearly two years ago after serving a 134-month sentence. *See* ECF Nos. 576, 610. Estep received deliveries of kilogram quantities of cocaine from Georgia whereupon he would direct his co-conspirators, including Ford, to pick up sub-portions of the drugs for distribution. ECF No. 229-1. Further, Ford explains, Estep pled guilty to money laundering and running an illegal gambling business in addition to leading the drug conspiracy. ECF No. 229. Ford did none of that, he says. More generally, Ford asserts, if he were sentenced today, he would no longer qualify as a career offender, and even if he did, that courts routinely vary below the career-offender guidelines.

Ford also claims that his record while incarcerated indicates that he is likely to succeed during his term of supervised release. He explains that his present sentence is the longest term of imprisonment he has faced and that he is now remorseful, a changed man. *See* PSR pp. 6-9; ECF No. 634-5. Indeed, it appears he has incurred only two disciplinary infractions, dating from 2017 and 2010, such that the Bureau of Prisons classifies him at a "low" level of security. ECF No. 634-1. Ford also flags his steady employment as a prison barber, an occupation he plans to continue post-release, and explains that he has family prepared to house him. *Id.*

The Government does not dispute the substantial disparity between Ford's punishment and that of his co-conspirator, Estep. Nor does it refute that, if sentenced today, Ford would unlikely

be subject to career-offender enhancements. It also does not disagree with Ford's essentially positive characterization of his time in the Bureau of Prisons and that he has a solid release plan. As with other defendants whom the Court has found warranted sentence reductions, Ford has incurred few disciplinary violations and has earned "good to outstanding work evaluations" while in prison. ECF No. 634-1; *see Watts* at *4; *Robinson* at *6.

Despite the fact that Ford's criminal history and the conduct leading to the instant charges against him are troublesome, after taking into account the specifics of Ford's most current conduct: the fact that the offense of which he was convicted was nonviolent; that it did not involve a firearm; the substantial disparities between Ford and his co-defendant Estep; and Ford's mainly positive post-sentence behavior, the Court believes that Ford's nearly twelve years in prison provide sufficient deterrence against further criminal behavior on his part and otherwise accomplish the objectives of sentencing set forth in 18 U.S.C. § 3553(a). The Court also acknowledges the purpose of the FSA and the First Step Act to reduce the discrepancy between the treatment of crack cocaine and powder cocaine offenses. Although Ford was charged with conspiring to distributing both drugs, the Fourth Circuit has determined that Congress did not intend to exclude defendants who committed such criminal acts from benefitting from the remedial goals of the First Step Act. *Gravatt*, 953 F.3d at 264.

Additionally, the Court again acknowledges the public health concern associated with the COVID-19 virus being present in federal prisons, which, while not in itself dispositive, is at least worthy of note. As of the date of the Opinion, the prison where Ford is incarcerated, FMC Devens, reports twenty-four confirmed case of COVID-19.

For the foregoing reasons, the Court **GRANTS** Ford's Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act and reduces his sentence to time-served plus three (3) days.

A separate Order will **ISSUE**.

/s/
_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**May 29, 2020**